[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————————

No. 98-4787

————————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/17/99
THOMAS K. KAHN
CLERK

D.C. Docket No. 97-3611-Civ-JAL

CHERYL COHEN, on behalf of herself and
others similarly situated,

Plaintiff-Appellant,

versus

OFFICE DEPOT, INC., a Florida corporation,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(August 17, 1999)**

Before BIRCH and CARNES, Circuit Judges, and MILLS[*], Senior District Judge.

CARNES, Circuit Judge:

---

[*]Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

Cheryl Cohen appeals the district court's dismissal of her Florida state law deceptive advertising suit against Office Depot. The district court struck Cohen's prayer for punitive damages from her complaint for failure to comply with a Florida statute requiring a plaintiff to obtain leave of court before requesting punitive damages. Finding that the other relief Cohen requested did not satisfy the amount-in-controversy requirement for diversity jurisdiction, the court dismissed her suit on jurisdictional grounds. For the reasons set forth below, we reverse.

## I. BACKGROUND

### A. FACTS

Cohen's complaint alleges that Office Depot made representations and statements in its catalogues which led "customers to believe that Office Depot's prices for merchandise in its catalog will be as low, if not lower, than the prices of identical merchandise purchased from any other office supply store, including Office Depot's own stores[,]" when "[i]n fact, . . . Office Depot's catalog prices are often significantly higher than the price of the same item in the Office Depot stores." The complaint also alleges that Cohen relied upon such advertisements in the Fall 1997 catalogue when she purchased by phone a color cartridge for $26.99 and file folder labels for $1.99. When those items were subsequently delivered, the accompanying invoice reflected no delivery charges in the price of the items. A

few days later, Cohen went into an Office Depot store and saw the same cartridge priced at $2.00 less, and the same labels priced at $0.30 less, than their prices in the catalogue. An Office Depot spokesman allegedly admitted to a newspaper that the claim of free delivery was false when the spokesman explained the difference between the store and catalogue prices by saying, "It is certainly not uncommon that catalog pricing would be a little higher because of providing free delivery."

## B. PROCEDURAL HISTORY

On November 12, 1997, Cohen filed a complaint in federal district court on behalf of herself and a proposed nationwide class of approximately 39,000 Office Depot customers, alleging that Office Depot had made deceptive statements regarding the pricing of its merchandise in violation of the Florida laws governing unfair and deceptive trade practices, fraud, and misleading and negligent advertising. In addition to compensatory damages, the complaint sought $10,000,000.00 in punitive damages, an injunction prohibiting deceptive advertising in the future, attorney fees, and costs. Because no violation of federal law was alleged, subject matter jurisdiction was founded solely upon diversity of citizenship under 28 U.S.C. § 1332.

Office Depot moved to strike the punitive damages request from the complaint and dismiss the lawsuit. The court granted the motion to strike the

punitive damages request on the ground that Cohen had failed to comply with Florida Statutes § 768.72, which requires a plaintiff to obtain leave from the court before including a prayer for punitive damages in a pleading. The court then determined that the other relief requested by Cohen failed to meet the $75,000 amount-in-controversy requirement for diversity jurisdiction. Accordingly, the court granted Office Depot's motion to dismiss Cohen's suit for lack of subject matter jurisdiction.[1]

## II. DISCUSSION

The issue on appeal is whether the district court erred in concluding that Cohen had not met the $75,000 amount-in-controversy requirement for diversity jurisdiction. For diversity cases originally brought in federal court, the amount in controversy is simply the sum claimed in the plaintiff's complaint, "if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 590 (1938).

Cohen argues that her requests for punitive damages, attorney fees, and injunctive relief, taken individually or together, satisfy the amount-in-controversy

---

[1]The court subsequently clarified that the dismissal was without prejudice.

requirement and establish diversity jurisdiction. Because we conclude that her request for punitive damages alone is sufficient for jurisdictional purposes, we need not consider whether the other relief she requests would suffice.

The Supreme Court has held that "[w]here both actual and punitive damages are recoverable under a complaint[,] each must be considered to the extent claimed in determining jurisdictional amount." Bell v. Preferred Life Assur. Soc. of Montgomery, Alabama, 320 U.S. 238, 240, 64 S. Ct. 5, 6 (1943). Here, Cohen requests $10,000,000 in punitive damages, which is obviously greater than the amount-in-controversy threshold of $75,000. It is undisputed that under state law Cohen would be entitled to an unspecified amount of punitive damages on two of her claims if she is successful.

Under our holding in Tapscott v. MS Dealer Service Corporation, 77 F.3d 1353, 1358-59 (11th Cir. 1996), in a class action lawsuit punitive damages may be aggregated to satisfy the amount-in-controversy requirement for each class member. To be sure, Tapscott involved Alabama law, not Florida law, and it did not establish a broad rule that all punitive damages claims may be aggregated for purposes of determining the amount in controversy. Tapscott did hold, however, that punitive damages may be aggregated where state law provides that an award of punitive damages is for the "public benefit" or "collective good," and the award

5

would reflect "the wrongfulness of the defendant's course of conduct as a whole." Tapscott, 77 F.3d at 1358.

Those conditions are met in this case. Because Florida law, like Alabama law, provides that "punitive damages are warranted only where the egregious wrongdoing of the defendant . . . constitutes a public wrong," Chrysler Corp. v. Wolmer, 499 So. 2d 823, 825 (Fla. 1986), awarding punitive damages is for the public benefit or collective good. Likewise, as in Tapscott, 77 F.3d at 1358-59, the award of punitive damages will reflect not the wrong done to any single individual but the wrongfulness of the conduct as a whole.

Accordingly, under Tapscott, punitive damages in this Florida diversity case may be aggregated to satisfy the amount-in-controversy requirement for each class member. But that can occur only if Cohen is permitted to assert her request for punitive damages. The district court struck Cohen's prayer for punitive damages, because she failed to comply with the conditions for seeking punitive damages set forth in Florida Statutes § 768.72. Section 768.72 provides as follows:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the

6

issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Cohen argues that she satisfied the requirements of § 768.72 because she proffered evidence of malice and wanton and reckless conduct sufficient to establish a reasonable basis for her punitive damages claim. However, the Florida Supreme Court has interpreted § 768.72 as requiring the dismissal of any request for punitive damages asserted without leave of the court. See Simeon, Inc. v. Cox, 671 So. 2d 158, 160 (Fla. 1996) (concluding "[i]t was inconsequential that the trial court . . . held a hearing" to determine whether there was an evidentiary basis for a punitive damages claim stated in the initial complaint, because under the statute "any punitive damages claim alleged prior to a party asking for and receiving leave of the court must be dismissed or stricken."). See also WFTV, Inc. v. Hinn, 705 So. 2d 1010, 1011 (Fla. 5th Dist. Ct. App. 1998); Mayer v. Frank, 659 So. 2d 1254, 1255 (Fla. 4th Dist. Ct. App. 1995).

Thus, if § 768.72 applies in this case, the district court correctly struck the request for punitive damages from Cohen's complaint, which means that request could not provide a basis for federal diversity jurisdiction. If, on the other hand, § 768.72 does not apply, then the request for punitive damages should not have been struck, and would provide a sufficient basis to satisfy the amount-in-controversy

7

requirement for diversity jurisdiction. Accordingly, we must determine whether the pleading requirements of § 768.72 apply here, which entails resolving whether they conflict with any Federal Rule of Civil Procedure.[2]

Federal courts sitting in diversity are required to apply state substantive law and federal procedural law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938); Lundgren v. McDaniel, 814 F.2d 600, 605 (11th Cir. 1987). The distinction between substance and procedure is often elusive, however, and the Supreme Court struggled for years to delineate it. In Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S. Ct. 1464, 1470 (1945), the Court adopted an "outcome-determinative" test, meaning that the question of whether to apply state or federal law in diversity cases should be resolved so that "the outcome of the litigation in federal court [would] be substantially the same . . . as it would be if tried in a State court." Realizing that even purely procedural laws could be outcome-determinative, the Court retreated from the York test 13 years later in Byrd v. Blue Ridge Rural Electric Coop., 356 U.S. 525, 78 S. Ct. 893 (1958). That decision held that in order to decide which rule should apply, courts must balance

---

[2]We recognize that § 768.72 contains a discovery component as well as a pleading component, however, its discovery provision is not at issue in this case.

the federal interest in uniform process against the state interest in uniformity of results. See 356 U.S. at 536-40, 78 S. Ct. at 900-02.

Seven years later, in Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136 (1965), the Court developed a two-part test for deciding when state law should apply in federal diversity cases. Under the Hanna test, a court must determine whether the state law in question directly conflicts with a Federal Rule of Civil Procedure. If it does, "the court [is] instructed to apply the Federal rule, and can refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions." Hanna, 380 U.S. at 471, 85 S. Ct. at 1144.

In addressing the applicability of § 768.72, at least one district court asked if it is substantive or procedural, and in answering that question looked to state law decisions characterizing the provision as substantive for some other purpose (such as the division of authority between the state legislature and judiciary). See Teel v. United Techs. Pratt & Whitney, 953 F. Supp. 1534, 1540 (S.D. Fla. 1997). That approach jumbles up the questions. Under Hanna, the proper question to ask is not whether the state law provision is procedural or substantive; instead, the court must ask whether the state law provision conflicts with a federal procedural rule. If it

9

does, the federal procedural rule applies and the state provision does not. Stated another way, if the state law conflicts with a federal procedural rule, then the state law is procedural for Erie/Hanna purposes regardless of how it may be characterized for other purposes.

The only exception is where the advisory committee, the Supreme Court, and Congress have collectively erred and adopted a federal procedural rule that is either unconstitutional or should not have been adopted under the Rules Enabling Act process because it is a matter of substantive law.  That exception will be exceedingly rare, and it does not apply here because, as we shall see, § 768.72 conflicts with Federal Rule of Civil Procedure 8(a)(3), which is a procedural rule and is not unconstitutional.  To reiterate the important  point that is sometimes overlooked:  where state law conflicts with a federal rule of procedure, the substance  versus  procedure question is asked only about the federal rule, not about the state law provision. That is the first prong of the Hanna test.

The second prong of the Hanna test comes into play only if the state law does not conflict with a Federal Rule; if that is the case, then the court must determine whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.  See Hanna, 380 U.S. at 468, 85 S. Ct. at 1142.  But those

10

determinations are not reached where the first prong of <u>Hanna</u> applies, <u>i.e.</u>, where the state provision conflicts with a federal rule of procedure.

Applying the <u>Hanna</u> test, federal district courts in Florida have reached different conclusions about whether § 768.72 applies in diversity cases. Most of the courts to address the matter agree that § 768.72 implicates Federal Rules of Civil Procedure 8(a) and 9(g), but they have split almost evenly on whether the statute actually conflicts with either or both of those rules. <u>See</u>, <u>e.g.</u>, <u>Alexander v. University/Gainesville Healthcare Ctr., Inc.</u>, 17 F. Supp.2d 1291, 1292 (N.D. Fla. 1998) (conflicts with Rule 8(a)); <u>Tutor Time Child Care Sys., Inc. v. Franks Inv. Group, Inc.</u>, 966 F. Supp. 1188, 1190 (S.D. Fla. 1997) (conflicts with both Rule 8(a) and Rule 9(g)); <u>Teel</u>, 953 F. Supp. at 1538-41 (no conflict); <u>Sanders v. Mayor's Jewelers, Inc.</u>, 942 F. Supp. 571, 575 (S.D. Fla. 1996) (no conflict); <u>Al-Site Corp. v. VSI Int'l, Inc.</u>, 842 F. Supp. 507, 512 (S.D. Fla. 1993) (no conflict); <u>State of Wisconsin Inv. Bd. v. Plantation Square Assocs., Ltd.</u>, 761 F. Supp. 1569, 1573-80 (S.D. Fla. 1991) (conflicts with Rule 8(a)); <u>Citron v. Armstrong World Indus., Inc.</u>, 721 F. Supp. 1259, 1261-62 (S.D. Fla. 1989) (conflicts with Rule 9(g)).

Cohen argues that § 768.72 conflicts with Federal Rule of Civil Procedure 8(a)(2) and (a)(3). Rule 8(a) states, "A pleading which sets forth a claim for relief,

11

whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

Rule 8(a)(2)'s "short and plain statement" rule abandons traditional pleading formalities, requiring only that the pleading "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). Cohen argues that § 768.72 essentially requires heightened pleading for punitive damages claims, contrary to the short and plain statement rule of 8(a)(2). It is clear, however, that a request for punitive damages is not a "claim" within the meaning of 8(a)(2); it is only part of the relief prayed for in a claim. Thus, there is no conflict between § 768.72 and Rule 8(a)(2).

As one district court has pointed out, "the more relevant portion of Rule 8 appears to be subsection (a)(3)." Teel, 953 F. Supp. at 1538. We have explained that under Rule 8(a)(3), any pleading that sets forth a claim must include a "'concise statement identifying the remedies and the parties against whom relief is sought. . . .'" Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1255, at 366 (2d ed. 1990)). Punitive damages are a remedy, so under the rule a request for them should be included in the complaint. As we noted above,

12

however, § 768.72 prohibits the inclusion of a request for punitive damages in any pleading without leave of court. Thus, it appears that § 768.72 does conflict with Rule 8(a)(3).

Office Depot contends that there is no real conflict between § 768.72 and Rule 8(a)(3) because Federal Rule of Civil Procedure 54(c) essentially renders Rule 8(a)(3) a nullity. It is true that Rule 54(c) tempers the effect of Rule 8(a)(3) somewhat by stating that, except in the case of default judgments, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." But we do not view that language of Rule 54(c) as eviscerating Rule 8(a)(3)'s express and unambiguous direction that the plaintiff include a demand for relief in her pleadings. "The demand in fact may be helpful in indicating the relief to which plaintiff is entitled. . . . In addition, relief that the parties do not desire should not be forced on them." 10 Wright, Miller, & Kane, Federal Practice & Procedure § 2662, at 158-60 (3d ed. 1998). Furthermore, the portion of Rule 54(c) relating to default judgments provides that where the party against whom the claim is brought fails to defend against the claim, the relief awarded in a default judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for

13

judgment." Thus, that part of Rule 54 actually reinforces Rule 8(a)(3)'s direction that the relief sought be included in the complaint.

Even if Rule 8(a)(3) does not <u>require</u> a plaintiff to include in a complaint a request for all the relief sought, there is still a conflict between § 768.72 and Rule 8(a)(3), because the rule clearly <u>allows</u> the plaintiff to include a request for punitive damages in her initial complaint, whereas § 768.72 <u>prevents</u> her from doing so. A state law may conflict with a Federal Rule even where it violates no affirmative command or requirement of the rule, <u>see</u> <u>Hanna</u>, 380 U.S. at 470, 85 S. Ct. at 1143, if the Federal Rule "occupies the statute's field of operation." <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1, 7, 107 S. Ct. 967, 970 (1987). <u>See also</u> <u>United States v. Lockheed Missiles & Space Co.</u>, 171 F.3d 1208, 1217 (9th Cir. 1999); <u>S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.</u>, 60 F.3d 305, 307 (7th Cir. 1995); <u>Exxon Corp. v. Burglin</u>, 42 F.3d 948, 950 n.3 (5th Cir. 1995); <u>Neifeld v. Steinberg</u>, 438 F.2d 423, 426 (3d Cir. 1971). Rule 8(a)(3) "occupies [§ 768.72's] field of operation," because Rule 8(a)(3) governs the ability of plaintiffs to request any and all of the relief sought (including punitive damages) in all pleadings that state a claim (including initial complaints). If applied in federal court, § 768.72 would impair the operation and effect of Rule 8(a)(3).

The nature of the conflict between § 768.72 and Rule 8(a)(3) is similar to the conflict in <u>Hanna</u> itself. The issue in that case was whether a Massachusetts law or Federal Rule of Civil Procedure 4(d)(1) should govern service of process. The Massachusetts law provided that service could be effected only "by delivery in hand upon [the] executor or administrator . . . ." <u>Hanna</u>, 380 U.S. at 462, 85 S. Ct. at 1139 (quoting Mass. Gen. Laws ch. 197, § 9 (1958)). Rule 4(d)(1), on the other hand, provided that "[s]ervice shall be made . . . [u]pon an individual . . . by delivering a copy of the summons and of the complaint to him personally <u>or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein</u> . . . ." <u>Id.</u> at 461, 85 S. Ct. at 1138-39 (quoting Fed. R. Civ. P. 4(d)(1)) (emphasis added).

Although the express language of Rule 4(d)(1) arguably could have been viewed as not conflicting with the Massachusetts law, the Supreme Court concluded that "the clash [was] unavoidable" because "Rule 4(d)(1) says – implicitly, but with unmistakable clarity – that inhand service is not required in federal courts." <u>Id.</u> at 470, 85 S. Ct. at 1143. Likewise, in this case, because Rule 8(a)(3) allows a plaintiff to request in her initial complaint all the relief she seeks, it says "implicitly, but with unmistakable clarity" that a plaintiff is not required to wait until a later stage of the litigation to include a prayer for punitive damages,

15

nor is she required to proffer evidence or obtain leave of court before doing so.  In short, Rule 8(a)(3) occupies the field in which the pleading portion of § 768.72 would otherwise operate, leaving no room for it.  The two provisions do conflict.

Having concluded that Florida Statutes § 768.72 conflicts with Rule 8(a)(3), we must apply Rule 8(a)(3) unless it transgresses the Rules Enabling Act or the Constitution.  See id. at 471, 85 S. Ct. at 1144.  The Rules Enabling Act, 28 U.S.C. § 2072, provides, in pertinent part:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrates thereof) and courts of appeals.
>
> (b) Such rules shall not abridge, enlarge or modify any substantive right . . . .

It is clear that a pleading rule such as 8(a)(3) relates to the "practice and procedure" of the district courts.  See, e.g., Follenfant v. Rogers, 359 F.2d 30, 31-32 (5th Cir. 1966) (matters of pleading are governed by "rules of practice" and therefore are controlled by the Federal Rules, not state law).   Furthermore, in Sibbach v. Wilson & Co., 312 U.S. 1, 14, 61 S. Ct. 422, 427 (1941), the Supreme Court held that as long as a Federal Rule "really regulates procedure," it will not be held invalid on the ground that it affects substantive rights. As the Court later explained:

16

> Undoubtedly most alterations of the rules of practice and procedure may and often do affect the rights of litigants. Congress' prohibition of any alteration of substantive rights of litigants was obviously not addressed to such incidental effects as necessarily attend the adoption of the prescribed new rules of procedure upon the rights of litigants who, agreeably to rules of practice and procedure, have been brought before a court authorized to determine their rights.

Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 445, 66 S. Ct. 242, 246 (1946).

Finally, none of the parties in this case or any other cases have challenged Rule 8(a)(3) as unconstitutional, and we see no basis for such a challenge.

## III.  CONCLUSION

Our application of Hanna leads us to conclude that the pleading component of § 768.72 does not apply in this case due to its conflict with Rule 8(a)(3).  For that reason, we hold that the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases.  It follows that Cohen's request for punitive damages should not have been dismissed for failure to comply with those requirements.  Having determined that the district court erred in striking Cohen's request for punitive damages, and that those damages may satisfy the amount-in-controversy requirement for diversity jurisdiction, we do not decide whether the other relief requested, including attorney fees and injunctive relief, would be sufficient to meet that requirement.

17

Accordingly, we REVERSE the district court's dismissal for lack of subject matter jurisdiction and REMAND the case for further proceedings consistent with this opinion.